UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRODERICK V. BULLOCK, SR.,

    Plaintiff,

    v.

HYATTE,

    Defendant.

CAUSE NO.: 3:19-CV-081-JD-MGG

OPINION AND ORDER

Broderick V. Bullock, Sr., a prisoner without a lawyer, filed a motion entitled "Motion for Immediate Injunctive Relief in the Sum of $1,000,000 Dollars" in which he seeks monetary damages from four people. ECF 16. He is also asking for immediate medical treatment. However, Bullock is proceeding in this case against only one defendant. The only claim on which Bullock was granted leave to proceed was against Warden Hyatte in his official capacity for injunctive relief for medical care to treat injuries sustained during an attack by a fellow inmate on February 2, 2019. ECF 4.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction, the moving party must show (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015).

Here, Bullock will not suffer irreparable harm if he is not immediately paid one million dollars. Neither has he demonstrated that legal remedies are inadequate if he is not immediately paid one million dollars. Finally, he has no likelihood of success on the merits because three of the four people from whom he wants one million dollars are not defendants in this case. The fourth person is a defendant, but this case does not include a claim for monetary damages. Therefore, the request for immediate injunctive relief for one million dollars must be denied.

Bullock also asks for three specific types of immediate medical treatment. However, an injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quotation marks and citation omitted). Additionally,

> "[t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage."

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted).

Therefore, before Bullock can obtain injunctive relief, he must make a clear showing that the medical care he is receiving violates the Eighth Amendment prohibition on cruel and unusual punishment. *See id.* and *Mazurek v. Armstrong*, 520 U.S.

2

968, 972 (1997). Bullock, like every inmate, is entitled to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). However, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Indeed,

> medical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008) (quotation marks and citations omitted).

Bullock is asking to be taken to "Dr. Price, Dr. Fang, Dr. Dietch, or Dr. Johnson for thermal keratopathy with stem-cell deficiency." ECF 16 at 1. However, his eyes were examined last week by an outside ophthalmologist: Dr. Robert B. Dinn, M.D. ECF 16-1. Dr. Dinn indicated that both eyes were internally stable. ECF 16-1 at 3. He prescribed three medications – one for three weeks. ECF 16-1 at 4-5. He also recommended Bullock return to see him at an unspecified time if he does not see another doctor to discuss "a *possible* stem cell transplant." ECF 16-1 at 3 (emphasis added). Bullock acknowledges visiting Dr. Dinn and he attached the medical report from that visit to his motion. ECF 16 and 16-1. Bullock does not deny receiving his medications and the three week treatment has not yet finished. Moreover, even if he were not in prison, it would not be

3

surprising for him to have not yet seen another doctor since his visit with Dr. Dinn. Based on this record, Bullock has not demonstrated he is not currently receiving medical treatment for his eye that reflects professional judgment, practice, or standards.

Bullock also wants to be taken to a hospital for elbow surgery. ECF 16 at 2. He explains his elbow was x-rayed on February 5, 2019, but he was not told the results until they were sent to him as a result of this lawsuit. *Id*. Dr. Marandet examined Bullock on February 5, 2019, and concluded there was "no indication for hospital admission at this time." ECF 13-3 at 7. The x-ray report from Meridian Radiology states Bullock's left elbow has a "moderate sized olecranon enthesophyte, which appears fractured with minimal displacement and overlying soft tissue swelling." ECF 13-3 at 17. An olecranon fracture is a "break in the bony 'tip' of the elbow [and t]reatment for an olecranon fracture depends upon the severity of the injury." *See* American Academy of Orthopedic Surgeons website at https://orthoinfo.aaos.org/en/diseases--conditions/elbow-olecranon-fractures (last visited on March 12, 2019). Based on this record, Bullock has not demonstrated he needs surgery. Neither has he demonstrated he is not currently receiving medical treatment for his elbow that reflects professional judgment, practice, or standards.

Finally, Bullock asks for "immediate outside treatment" for his burns. ECF 16 at 2. Bullock received 1st and 2nd degree burns on February 2, 2019. ECF 13-1 at 2. He was examined by a nurse and provided with bandages, creme, and pain medication. *Id*. On February 4, 2019, he was examined by a physician who prescribed additional pain medication. ECF 13-3 at 6. Bullock was examined again the next day by the same

physician who noted his dressings had been changed and his burns looked "good with no sign of infection." *Id*. The physician recommended creme, but Bullock refused. *Id*. The physician recommended Bullock be transferred to the infirmary for burn care, but again Bullock refused and became belligerent. *Id*. and ECF 13-3 at 19. On February 9, 2019, Bullock twice refused to be seen or treated by a nurse who visited his housing unit. ECF 13-3 at 9–10. On February 14, 2019, the physician saw Bullock, but terminated the encounter early because Bullock "became verbally abusive." ECF 13-3 at 11. Based on this record, it is Bullock – not the prison medical staff – who are preventing him from receiving treatment for his burns. Thus, Bullock has not demonstrated he is not currently receiving medical treatment for his burns that reflects professional judgment, practice, or standards.

For these reasons, the motion (ECF 16) is DENIED.

SO ORDERED on March 14, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

5