UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRODERICK V. BULLOCK, SR., <br><br> Plaintiff, <br><br> v. <br><br> HYATTE, <br><br> Defendant. | CAUSE NO.: 3:19-CV-081-JD-MGG |

OPINION AND ORDER

Broderick V. Bullock, Sr., a prisoner without a lawyer, has filed two motions requesting immediate injunctive relief. ECF 23, 25. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction, the moving party must show (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015).

Bullock is proceeding only on a claim for injunctive relief against Warden Hyatte in his official capacity related to injuries he sustained on February 2, 2019, after he was attacked by a fellow inmate at the Miami Correctional Facility. ECF 4. His motions request punitive damages in the sum of $1,000,000 against Warden Hyatte and unnamed "officials" for being deliberately indifferent to his medical needs. ECF 23 at 2; 25 at 1–2. However, as noted in the court's previous order (ECF 17) denying his first

motion for a preliminary injunction, Bullock will not suffer irreparable harm if he is not immediately paid one million dollars. Neither has he demonstrated that legal remedies are inadequate if he is not immediately paid one million dollars. And, this case does not currently include a claim for any monetary damages. Therefore, the requests for immediate injunctive relief for one million dollars must be denied.

Bullock also requests immediate medical treatment related to his various injuries. An injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quotation marks and citation omitted). Additionally,

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, before Bullock can obtain injunctive relief, he must make a clear showing that the medical care he is receiving violates the Eighth Amendment prohibition on cruel and unusual punishment. *See id. and Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Bullock, like every inmate, is entitled to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). However, "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th

Cir. 1996). Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Indeed,

> medical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008) (quotation marks and citations omitted).

Bullock states that prison officials have done "nothing" to address his elbow fracture, burns, and ear injury. ECF 25 at 2. However, the record belies that assertion. The court summarized the medical care Bullock has received since the incident for his elbow fracture and burns in its previous order. *See* ECF 17 at 4–5. Bullock's current motion provides no information that would change the court's analysis or demonstrate that he is not receiving medical treatment for those injuries that reflects professional judgment, practice, or standards. As to his ear, Bullock attaches a photograph of a bloody ear lobe (ECF 25 at 4), but he does not indicate when the photograph was taken. The record shows that when Bullock was examined by a nurse on the day of the attack, she documented a "0.5 cm cut to outer left ear edges," noted that cream was applied to it, and prescribed pain medication. ECF 13-3 at 1–2. The subsequent treatment notes of Bullock's examining physician do not reflect that Bullock had any further complaints related to his ear. Bullock provides no information to suggest that the nature of his ear

3

injury is recent, severe, or requires immediate medical attention. Based on this record, he has not made a clear showing that the care he is currently receiving for his elbow, burns, and ear violates the Eighth Amendment. Therefore, the requests for immediate injunctive related to these injuries will be denied.

Bullock also complains that he is not receiving adequate care for his eye injury. It is undisputed that, since the attack occurred on February 2, 2019, Bullock's eye has been examined and treated by multiple medical professionals including an optometrist and an outside ophthalmologist. *See* ECF 17 at 3–4 (summarizing the medical record). However, Bullock now alleges that prison officials are failing to follow the recommendations of those specialists and are withholding medication in the form of "serum tears" that were prescribed by Dr. Stephen M. Johnson from the Midwest Eye Institute on March 25, 2019. ECF 23 at 1; 25 at 2; *see also* ECF 22-1. Bullock cites to orders for "urgent" lab work and a prescription for serum tears (1 drop, 6 times a day, for 1 year). ECF 23 at 1; 22-1 at 1, 5. Because there is a question as to whether necessary medication or care for Bullock's eye is being withheld, the Warden will be required to respond to that allegation.

For these reasons, the court:

(1) DENIES the motions (ECF 23, 25) to the extent Broderick V. Bullock, Sr., requests immediate injunctive relief in the form of $1,000,000 and/or immediate additional medical care for his elbow, burns, and ear;

(2) ORDERS Warden Sevier to file a response to the motions (ECF 23, 25),

including affidavits and/or medical evidence if necessary, by **June 12, 2019**, only to the extent Broderick V. Bullock Sr., alleges that medication or treatment related to his eye injury is currently being withheld; and

(3) GRANTS Broderick V. Bullock Sr., until **June 26, 2019**, to file a reply.[1]

SO ORDERED on May 22, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

---

[1] This case has been stayed pending the screening of an anticipated amended complaint. ECF 20. Although the parties are now being ordered to respond to the preliminary injunction issue, the stay remains in place with regard to the potential amended complaint and the obligation to answer it.